UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | CAUSE NO.: 1:19-CR-10-HAB |
| ) | |
| TIMOTHY J. CRISWELL ) | |

**OPINION AND ORDER**

Before the Court is Timothy J. Criswell's motion for compassionate release. (ECF No. 85). In his motion, Criswell—currently serving a 15-year term of imprisonment—asserts three reasons why his situation is extraordinary and compelling such that he should be released: (1) the incapacitation of the caregiver for his minor child; (2) unforeseen conditions of his confinement; and (3) his rehabilitation since his incarceration. For the reasons below, Criswell's Motion (ECF No. 85) will be DENIED.

**I.  Factual Background**

In February 2019, Criswell was charged in a five-count indictment with drug and gun crimes. In November 2020, he plead guilty to Counts 1 and 2 charging him with possessing 50 gram or more of methamphetamine and carrying a firearm during and in relation to a drug trafficking crime. *See* 21 U.S.C. § 841(a)(1); 18 U.S.C. § 924(c). Ahead of Criswell's sentencing, a United States Probation Officer prepared a Presentence Investigation Report ("PSR") which detailed the conduct giving rise to his conviction.[1] (ECF No. 69).

In December 2018, an officer from the Garrett Police Department attempted to initiate a traffic stop on a vehicle driven by Criswell. Rather than stopping, Criswell led officers on a dangerous, high-speed chase that ended with Criswell crashing his car. The car stopped but the

---

[1] Criswell made no objections to the PSR. (ECF No. 66).

chase did not; Criswell fled on foot and only stopped once officers threatened the use of their taser.[2]

Once detained, officers searched Criswell and his vehicle. On his person, officers found two loaded handguns—one stolen and one with an obliterated serial number. Inside Criswell's vehicle, officers found bags containing methamphetamine and marijuana, a hypodermic needle, a smoking device, two digital scales, and ammunition. The methamphetamine, according to analysis by the DEA, was 100% pure and weighed 60.4 grams.

Officers then took Criswell to jail where he was interviewed. He told officers that he was homeless and living out of his car. He also informed them that he had a meth problem and regularly smoked marijuana. And he admitted to selling methamphetamine and small portions of marijuana. Criswell's typical charge for methamphetamine was $300 per quarter ounce.

Rather than try his case, Criswell pleaded guilty to Counts 1 and 2 pursuant to a plea agreement. Based on the PSR, the Court determined Criswell's total offense level to be 29 and his criminal history category to be VI based on a criminal history score of 15. These calculations yielded an advisory guideline range of 151 to 188 months' imprisonment. Yet Count 1 carried a statutory mandatory minimum sentence of 10 years imprisonment and Count 2 carried a statutory mandatory minimum sentence of 5 years' imprisonment, to run consecutively. On May 5, 2021, the Court sentenced Criswell to 180 months' imprisonment—the minimum required by statute. (ECF No. 82). Criswell now moves for compassionate release under 18 U.S.C. § 3582, well before his anticipated release date in 2031.[3]

## II.     Legal Standard

Generally, sentences imposed in federal criminal proceedings are final and may not be

---

[2] Criswell admitted that he had several active arrest warrants once detained by officers.
[3] https://www.bop.gov/inmateloc/ (last viewed 05/14/2025).

modified. 18 U.S.C. § 3582(c). Yet 18 U.S.C. § 3582(c)(1)(A) provides a narrow exception to the general prohibition:

> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

*Id.* Defendant bears the burden of establishing his entitlement to relief under 18 U.S.C. § 3582(c)(1)(A). *See United States v. Gold*, 459 F. Supp. 3d 1117, 1119 (N.D. Ill. 2020).

The first hurdle for a defendant who moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is to identify "extraordinary or compelling reasons [that] warrant such a reduction." *Id.* Such a reduction must also be "consistent with applicable policy statements issued by the Sentencing Commission. *Id.* If the defendant fails to provide extraordinary and compelling reasons for a reduction, the Court's analysis ends there. *United States v. Ugbah*, 4 F.4th 595, 598 (7th Cir. 2021). But if the defendant can prove an extraordinary and compelling reason, the Court must then consider the factors under 18 U.S.C § 3553(a) to determine whether a sentencing reduction is truly warranted. *United States v. Thacker*, 4 F.4th 569, 574-76 (7th Cir. 2021).

### III. Discussion

Criswell asserts that the incapacitation of his child's caregiver, the conditions of his confinement, and his rehabilitation serve as extraordinary and compelling justifications for his

3

release. The Government responds that these reasons, whether alone or in combination, do not meet the extraordinary and compelling threshold.[4]

Under 28 U.S.C. § 994(t), Congress expressly delegated the authority to "describe what should be considered extraordinary and compelling reasons for sentence reduction" to the Sentencing Commission. Relevant here, U.S.S.G. § 1B1.13 provides that the following family circumstance could meet the extraordinary and compelling threshold: "The death or incapacitation of the caregiver of the defendant's minor child[.]" U.S.S.G. § 1B1.13(b)(3)(A). Regarding rehabilitation, the policy statement reiterates § 994(t) insofar that "rehabilitation of the defendant is not, by itself, and extraordinary and compelling reason" but may be considered as part of the Court's § 3553(a) analysis. U.S.S.G. §1B1.13(d); 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). Lastly, the policy statement contains a catch-all provision which encompasses "any other circumstances or combination of circumstances that, when considered by themselves or together, with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. §1B1.13(b)(5). With this backdrop, the Court addresses each of Criswell's reasons in turn below and finds, even when viewed in combination, they fall short of the extraordinary and compelling mark.

Criswell's first basis for compassionate release is that his 76-year-old mother is incapacitated such that she is no longer able to care for his 9-year-old son. "'Incapacitation' within

---

[4] The Government also raised exhaustion as a defense because Criswell only provided conclusory reasons for his release before the warden and with little, if any, support for those assertions. For example his request to the warden merely makes representations such as "75 year old elderly mother is the only available caregiver for my children and is incapacitated[,]" "[c]onditions of confinement unforeseen by the Court at the time of sentencing[,]" and "[d]rug and alcohol free since 2018; and I am not a danger to my community based on extensive evidence of documented successful rehabilitative efforts." (ECF No. 85-1). In his present motion, he expands on those reasons significantly. While Criswell did not paint a full picture before the warden, he raises the same issues. The Court will thus give him the benefit of the doubt and decide his motion on the merits.

the meaning of § 1B1.13(b)(3) typically means that the individual is 'completely disabled' and 'cannot carry on any self-care' or 'is totally confined to a bed or chair.'" *United States v. Gross*, 2024 WL 4100325, at *3 (N.D. Ind. Sept. 5, 2024) (collecting cases). In this context, the Court considers whether medical records support a caretaker's incapacitation. *See United States v. Barnes*, 2020 WL 6129206, at *3 (N.D. Ind. Oct. 19, 2020) (Without medical records to support the alleged medical conditions, "[t]he Court is not inclined to simply take the Defendant's word for it and finds that he has failed to carry his burden."). And this Court has previously considered whether there are others who can help ease the burden on the caretaker. *See United States v. Barnes,* 2022 WL 2712682, at *5 (N.D. Ind. July 13, 2022) ("Asking a member of Defendant's family to relocate to care for a family member is a significant request, but so is asking that Defendant be released five years early to do the same.").

With that, the Court cannot find that Criswell has met his burden to show his mother's incapacitation. As his mother's letter to this Court indicates, one "can imagine at [her] age…the difficulty in caring for and keeping up with a nine year old[,] active boy." (ECF No. 85-1 at 6). That alone, the Court agrees, creates a difficult situation. And with her age, Criswell's mother suffers from severe chronic backpain, essential hypertension, and chronic generalized anxiety disorder. (ECF No. 92-1 at 1). She was also recently screened for ischemic heart disease. (ECF No 85-1 at 5).

While sympathetic to the difficulties her age and conditions create, the scant medical records that Criswell provides fail to meet his burden to show his mother is incapacitated. He provided two pages of medical records—one record merely lists her conditions and the other was from a "routine medical exam[.]" (*Id.*). As the Government points out, the records make no mention that she was diagnosed with heart disease; she was simply screened. Nor do the records

5

detail the extent of Criswell's mother's other conditions and whether treatment would alleviate those ailments. *See United States v. Bell,* 2024 WL 4678969, at *2 (S.D. Ill. Nov. 5, 2024) (cancer diagnosis, without more, was insufficient to establish a caregiver's incapacity). And nothing suggests that she is completely bedridden or completely disabled. Even Criswell admits as much in his motion. (ECF No. 85 at 3 ("[Criswell's mother]…is not completely disabled or on her death bed.")). In his reply brief, Criswell argues that "the definition of incapacitation…applies other than [in situations of] complete disability." (ECF No. 92 at 5 (citing *United States v. Fields*, 569 F. Supp. 3d 231 (E.D. Pa. 2021)).[5] That may be true. But only armed with two pages of medical records summarizing her conditions, Criswell simply fails to meet his burden to establish his mother's incapacitation.

The Court agrees that Criswell's mother may face many challenges in caring for his young son, but it is not uncommon in circumstances such as Criswell's. It is an unfortunate consequence of his crimes: "Many families must take up the slack caused by incarceration, but the burden that incarceration causes is not a reason that justifies release." *Barnes*, 2022 WL 2712682, at *5. And it appears that Criswell's mother can receive assistance from other members of the family. His mother mentions in her support letter that Criswell would have a strong support system upon his return from prison. The Court sees no reason to doubt that the same support system would be present for his young son in Criswell's absence. And his adult children also wrote letters of support for Criswell. Those individuals, although it may be burdensome, could step in to help too.[6] *See id.*

---

[5] The extra-jurisdictional *Fields* case presents a grossly different situation in which an inmate's child was placed into foster care after "allegations of physical, verbal, and sexual abuse at the hands of her mother and her mother's boyfriend." 569 F. Supp. 3d at 234. The petitioner sought compassionate release to participate in custody proceedings. *Id.* The court held that "[w]here a movant seeks compassionate release because their child has been removed from the custodial parent either due to abuse or neglect or due to the custodial parent's incarceration[,]" such "determinations are ultimately individual assessments based on the specific facts before each court." *Id.* at 241. *Fields* is merely persuasive, and the Court finds those facts inapposite to the present situation.

[6] Criswell also argues that the availability of other caregivers is not a consideration under U.S.S.G. § 1B1.13(b)(3)(A). That is not true. *See Barnes,* 2022 WL 2712682, at *5 (Under U.S.S.G. § 1B1.13(b)(3)(A), "easing [the caregiver's]

Even "unwilling individuals are not [necessarily] unavailable." *Gross*, 2024 WL 4100325, at *3. A mere preference for Criswell to serve as a caregiver for his son "does not render the situation extraordinary and compelling." *United States v. Schaap*, 2021 WL 527502, at *3 (N.D. Ind. Feb. 12, 2021).

Criswell's next basis for compassionate release is the conditions of confinement he faces at FCI Hazelton. But he does nothing to distinguish his situation from that of other prisoners that the facility houses. In this way, his situation is by no means extraordinary; it is common to all prisoners at FCI Hazelton. While those conditions may be harsh, such challenges are more appropriately addressed through a habeas corpus petition or a claim under the Eighth Amendment. Yet those conditions provide no basis for compassionate release.

Lastly, Criswell believes his rehabilitation since his confinement is an extraordinary and compelling reason for his release. But that alone can never meet the extraordinary and compelling threshold. *See* U.S.S.G. §1B1.13(d); 28 U.S.C. § 994(t). And the Court has considered Criswell's reasons together and finds them no more worthy of compassionate release. He has not established that his mother is incapacitated; his conditions of confinement are common to all prisoner at FCI Hazelton; and his rehabilitation, although laudable, is not extraordinary and compelling. *See Barnes,* 2022 WL 2712682, at * 8 ("Defendant's proposed reasons do not interact in a synergistic fashion where the whole is greater than the sum of its parts. Instead, the reasons are separate, with neither particularly close to meeting the statutory requirements."). All told, Criswell fails to provide this Court with extraordinary and compelling reasons for his release. Having found that

---

burden" was not extraordinary and compelling where others were available to "take up the slack[.]"). Moreover, even *Fields*—which Criswell cites in supports of his positions—held that "*[i]f a movant is the only available alternative caregiver* and the applicable sentencing factors do not weigh against release," compassionate release may be warranted. 569 F. Supp. 3d at 241 (emphasis added). That case apparently required that the petitioner be the only available caregiver too.

7

he does not meet this standard, the Court need not address the factors under 18 U.S.C § 3553(a).

### IV. Conclusion

For these reasons, Defendant's Motion for Compassionate Release (ECF No. 85) is DENIED.

SO ORDERED on June 4, 2025.

                                         s/ *Holly A. Brady*
                                         CHIEF JUDGE HOLLY A. BRADY
                                         UNITED STATES DISTRICT COURT